May it please the court, my name is Sam Angel, I represent Madison County. The appellant, I'd like to reserve five minutes to respond to counsel's argument, if I may. To begin with, I'd like to direct the court to the first argument that we've made, which is whether or not Mr. Williams had a protected property interest in his employment. This is an important issue that we're asking the Ninth Circuit to review how the Idaho Federal District Court is handling employee manuals when it comes to protected property interests. The district court seems to be all over the place. Yes, it's difficult. And I'd like this court to affirm what it held in Lawson v. Umatilla County. And in Lawson, that's a case that stood for the proposition that in an at-will state, a disclaimer of contract precludes a finding of a protected property interest. And so we're clear on what Lawson held. Lawson is an Oregon case. In Oregon, employees are at-will. In Lawson, there was an employee contract that had a disclaimer, a disclaimer of contract. In addition, there was also some language in that employee manual that provided due process for the employees in an appeal hearing. In addition, there was some language in that employee contract, or that employee manual, that allowed a probationary period of six months to a year. Are you familiar with the Mitchell v. Zilog case in Idaho? Because that seems to be fairly similar to what you're arguing. That's an Idaho Supreme Court case from 1994, which says the presumption of an at-will employment relationship can be rebutted when the parties intend that an employee handbook or manual will constitute an element of the employment contract. Whether a particular handbook does so may be a question of fact unless the handbook specifically negates an intention on the part of the employer to have it become a part of the contract. Right. Is that what your view is of Idaho law as well? Effectively, yes. Idaho law, Idaho's a little bit different than Oregon. We are an at-will state created by common law. That's effectively a distinction without a difference from Oregon. In addition, in Idaho, unless there is a provision that creates a contractual relationship in the employee manual, then the concept is that the at-will status should be preserved in And that's important because in each of the, in this case, particularly with the Madison County personnel policy, there is a very clear disclaimer of contract, very similar to the one in Lawson. And this disclaimer has been reviewed in various district court cases in Idaho, the Harms case, the Sommer case, and the Brown case. And where the Idaho District Court has become confused. Is that a common provision from county to county? Yes. I would estimate that of the Idaho counties and cities, there are many of them that have that contract disclaimer language in them. It was a little bit more prevalent maybe a decade ago for there to be contract disclaimer language as opposed to language that specifically says you are an at-will employee. I think that employers thought that that's a bit redundant considering the fact that it was very clear in Idaho under common law that you were at-will employees. There's also some language that in the same document that says, except as otherwise provided, employees will not be suspended, etc. except for cause related to performance of their job duties. Correct. That seems to point in a different direction. And that's the important thing with Lawson. So if this court gets back to Lawson, there was the same type of language in the Lawson case. In Lawson, there was a language that said that employees would only be disciplined for certain violations and that they were entitled to an appeal hearing. And what this court held in Lawson is that the disclaimer language overrode that. That was effectively discretionary. Well, it ends up being an employer policy rather than a contractual obligation, I think is the distinction to be drawn. It doesn't make it not a policy. It just means that you can't enforce it as a matter of contract. Exactly. And that's important because we want to allow counties and cities to offer some due process to be fair with their employees without converting them into contractual employees. What is the meaning of this wording I just read to you? What is the meaning? Does it have meaning? Yes, it has meaning. You're saying that any meaning it has is overridden by the wording that personnel policy is not a contract. Correct. I think that that's what Lawson, I think that that's what this court meant in Lawson. If you'll recall, the disclaimer in Lawson didn't take away the employee's right, certain limitations on how they would be disciplined or their right to an appeal hearing. It just said that they would not be contractual employees. This court, it reversed the district court in Lawson saying because the district court ignored the importance of the disclaimer in the Umatilla personnel policy. That to me is the key issue in this case. There should not be a plus one situation where the Idaho district court has said, well, we recognize that there's a disclaimer in these policies, but, and we're not going to sort of recognize that unless there has also been some other happening, such as an at-will acknowledgment in the actual signature line of the document. Or unless there's a situation where, well, if you're a probationary, if they have a probationary period, then that might suggest that the employees were at-will during the probationary period, but something else afterwards. The sheriff seemed to think there was a duty to provide a hearing. Yes, I think that the sheriff in fairness wanted to provide it. What you're saying is what the sheriff thought or didn't think is really not controlling. That's true. I mean, the sheriff is looking at it and attempting to follow it. The sheriff is not, by his decision in each individual case, changing the policy itself. I haven't heard you mention this, but could you very briefly address the issue of waiver here on whether or not this is still alive? Sure, yes. And getting back to our, we filed an objection to the proposed jury instructions with the court. Let me back up, first of all. This matter was heard by the magistrate court at summary judgment. A report and recommendation was given to the district court. When you say this matter, you mean a summary judgment motion? Yes, the motion for summary judgment was heard by the magistrate. Is the denial of summary judgment a legal ruling as to anything other than the existence of facts for trial? Well, that's a good question. I don't know in general. Well, I mean, obviously if summary judgment is granted on an issue and nobody challenges that, then whatever it is that was granted remains in the case unless it's rethought by the district court. But if the district court says, no summary judgment, let's keep going, what is determined as a matter of law, if anything? Yeah, I would suggest almost nothing. And that was our position going forward, is that the court denied our motion for summary judgment to dismiss some of his claims. The court said and implied that there were issues of fact on this protected property interest claim and then sent it to trial. And so we understood at that point that we would be going to trial and that the plaintiff would have the regular burden of proof that they would have at trial, which would include proving that the plaintiff had a protected property interest. The magistrate found that there was a protected property interest. It was not a situation where the magistrate said, well, there are enough disputed issues  I think that the magistrate... But isn't it correct that the magistrate found that there was a protectable property interest? Yes or no? I have to say no because she equivocated on that. And one of the things that she said is, quote, it is at least disputed as to whether the notice had any effect upon the terms of the Madison County personnel policy, which indicated an introductory period was for only one year. She was talking about the fact that Mr. Williams was placed back on probation as a form of discipline for a previous matter. And when she looked at that, she thought, well, at least there is an issue of fact as to whether or not that changed his employment status. So you're saying you didn't object because you thought she was leaving the matter open for trial? Correct. Exactly. And then what... It was on November 18th of 2014, between that time and the district judge adopted the findings of the magistrate in February of 2015, correct? Correct. You hadn't filed anything in that period? No. And then it's important, I would also mention, Your Honor, that when we arrived at trial, we did submit objections to proposed jury instructions. One of them proposed by the plaintiff included the instruction that he was, he had a protected property interest. We objected to that instruction on the grounds that it presupposes that Plaintiff Travis Williams had a reasonable expectation of continued employment, and that's at the further excerpts of Record 30. The thing that bothers me about that is now you're right on the eve of trial. So if the judge had said, and certainly trial judges have to be ready, willing, and able to admit error and change things, but if that had happened here, arguably it would have required the reopening of discovery, wouldn't it? Well, I don't think so. I think... The magistrate's order addressed, but then didn't rule on the admissibility of a video that the plaintiff wanted to present, isn't that correct? If I recall correctly, yes. However, if I recall, the summer judgment deadline was at or near the close of discovery anyway, first off. And so discovery had been completed at that point. And second, the plaintiff always understands that they have the duty and the burden of proof on each element of a constitutional claim. They would have conducted their discovery on those claims up until that point and had an opportunity to present that evidence at trial. So I don't think there was any prejudice to the plaintiff in addressing that issue as we did at trial. And I would just reiterate that not only did we file that written objection, there was a jury instruction conference held off the record, and then we went back on the record and reiterated our objections to that, as noted in the written instructions. So I do think that we properly preserved that. I think that also under... I'm sorry. Did the jury instruction that you offered include the element of proving that he had a protectable property interest? We offered two jury instructions. One of them was not the most artfully drafted when it related to the... So the answer to that part of it is, no, it didn't? Not on the one related to the due process claim. On the substantive due process claim, it did include the language that... But the substantive due process claim, the plaintiff lost on that, correct? Sure. And I... Sure. That's correct. Absolutely. The problem with that that I have a little bit is that as we worked through the jury instructions, the court proposed a set of instructions at the conference and we started to work from them. It becomes difficult because they move over time when you're preparing for trial in those hours leading up to the jury, the time that the instructions are given. I know that we intended to have that in, that I would have wanted to have that in, and that the court's proposed instruction had a sentence that said, I instructed that Mr. Williams had a protected property interest. And we objected to that because we didn't believe that that was a correct statement of law. That was number 24, is that right? Yes. And then the court ended up giving instruction number 11. And so we were intending to object to both the plaintiff's proposed 24, and that's in our FER 30, and then also what was given as final jury instruction number 11. Thank you. Did you want to save a little rebuttal time? Yes. Five minutes. Well, no. There's two minutes left, so... Did you hang... That's the way it works. You use the whole time, so... Right. I will hang on to a couple minutes. Yeah. May it please the court. My name is Deanne Casperson, and I'm here today on behalf of the appellees and cross-appellant Travis Williams. Just briefly, I'd like to address the argument that my opponent has just raised. In addition to the fact that the magistrate court did make a ruling on that, I wonder... I have to ask you about that. Are you aware of any precedent that says that the denial of a summary judgment motion equates to a holding about anything that binds the case from there on out, or does it just go to trial? In other words, if the district court had granted the motion for summary judgment in part to say there's a protected property interest, that's something that is presumably objectable to, but I don't understand how the denial of summary judgment becomes binding with respect to whatever the reasoning is behind it. Well, except that clearly Judge Dale found... She made that factual determination in terms of... Even though she denied summary judgment on that, she made this factual determination. She can't make a factual determination on summary judgment. The only question is whether there is an issue of fact. Well, except that, what she said is, and this is in the record on 293, the court's holding in Hollis, which relies upon Brown... I'm sorry. 293? Yeah, 293. But she also... I mean, yes, it's quite... The gist of the holding is, I think that there is a protected property interest, but at the top of the page it says, at least it's disputed. And I guess I'm just having difficulty seeing that the denial of summary judgment means that you can't later... That you aren't put to your proof later on all the elements of your claim. Once summary judgment is denied, the case goes forward. And I guess I just have difficulty seeing why they were obliged to object then instead of at the phase of trying the case. Right. So I think what's interesting here is the Hollis case actually was the exact same counsel that is before you now. So there had been past history with regard to the district court and what it had ruled in the past. Are you familiar with the Zilog case that I raised with opposing counsel? Just vaguely. Okay. As I read that case, it appears to hold that under Idaho law, when an employee handbook contains a disclaimer that it is contractual, it isn't contractual. Right. So it would seem to me that the magistrate judge was just wrong as a matter of law. And I understand you're arguing that the defendant doesn't have the right to raise that. But they did object to the instruction, correct? So this is where it's unique. That's yes or no. Did they object to the instruction? They objected to our instruction. Okay. But they filed their own instruction and asked the court to give their own instruction, never requesting that the jury find a protected property interest. So they didn't even ask for what they're now complaining on appeal for the jury to find. The only time they ever asked for an instruction that the jury determined whether he had a protected property interest was in their substantive due process. It was never raised contemporaneously before the court. So that's a different theory of waiver. Your theory is that because they didn't offer a proper instruction, they don't get to complain about the instructions? Right. Well, I think there's two. So number one, I think they had an obligation to object to the report and recommendation. They certainly raised the bias issue before the district court. But they didn't raise the protected property interest. So even if they thought that the magistrate had somehow erred in making this determination, they had to bring that to the district court. Well, there's two things that bother me about that. That has a certain attraction to it on the surface. But first of all, on August 31st, you filed a motion in Lemony addressing the same question. And they filed a response on September 10th saying that they felt that there was no protectable property interest. The judge ruled on that, I think, the day of trial or the day before trial. But the point is, they made it clear before the trial started that they were still objecting, even if they hadn't filed a formal objection. And then when they filed their trial brief on the 15th, two weeks before the trial, they also said in the trial brief that you had the duty to prove a protectable property interest. So I'm having a lot of trouble with this having been waived. So the point of the motion in Lemony was not to raise that issue again. And what I was trying to prevent was from the defense counsel using the phrase, at will, to continuing to refer to create some confusion with the jury. There's no doubt that the judge looked at that and said, listen, this has already been found by the magistrate court and said, it can't be found by the magistrate court. That was defendant's motion for summary judgment. So they said they were entitled to judgment as a matter of law. You did not file a motion before the motion in Lemony saying we are entitled to a partial judgment as a matter of law, that there was a protected property interest. As I read it, you did not make that motion as a partial summary judgment motion. I didn't make that motion. OK, so why the defendant's view of the case, when the magistrate judge rejected their bias issue, I understand why they would object to that, because they still wanted summary judgment on that question. But I really have trouble seeing how you essentially are asking and achieved at the court partial summary judgment in your favor without ever having asked for it until you put in your instructions. But the rule would allow a sua sponte even direction of summary judgment as well. And so I think it was with. Well, it wasn't. It was not clear that that's what the report and recommendation was. The report and recommendation ended by denying the defendant's motion full stop. Right? I guess it was granted in part, but not with respect to that issue. And it wasn't granted in part with respect to the plaintiff at all. Right. I mean, it is maybe somewhat confusing, but on the other hand, isn't it, don't defendants have some burden to raise that issue? I mean, they did raise it many times and doesn't plaintiff have the burden to prove the case, but they didn't. They got the instruction that they wanted. They got the very instruction that they asked for. And you got the instruction saying there was as a matter of law, protected property interest and that they objected to. Right. But from the perspective of what was going on in the case, you have to look at the footnote that the magistrate dropped in that decision. We had evidence of the county attorney having a public forum meeting talking about moving away from the four cause policy to go to an at will policy. The sheriff has admitted that there's an at will policy. That's a great jury argument. And that's what it should have been. It is. But by not raising it, they've kind of sandbagged both the district court and us. We could have put on that evidence. We were prepared to move it on that. You knew before trial that they objected to that instruction and that they thought you had to prove it. What I knew before trial is what they asked for in their instruction. They were raising those objections, but it didn't make sense with what they wanted in their own instruction. And to tell you the truth, based on the evidence that we had in support of four cause termination and the magistrate's recommendation that they were on shaky ground by continuing to object to this, I was shocked that they raised that later. I mean, if this was really an issue, when we had our meeting with the district court and we went over jury instructions, why wasn't there something raised there? They wait till appeal. We could have easily put on that evidence. Troy Evans, the county attorney, they called him to the stand. Were the jury instructions approved before the trial started or during the trial? We had the ruling on the motion in limine on the first day of trial. And then we didn't get the final jury instructions until later. And I couldn't tell you what day that was, but it was probably maybe a day or two, which is typical, before we actually submitted it to the jury. But setting all of that aside, there is substantial evidence. I mean, and I know the jury didn't get to decide that, but to not- Substantial evidence doesn't equate to summary judgment in your favor. Substantial evidence is what would support a jury verdict. Right. And I understand what the court is saying. Is my point is, is that there had to be some point along there. And certainly there's clear law that indicates that if the jury instruction, that you've got to actually object to the jury instruction. And I can tell you what was said. All was said when Judge Kuhnhauer gave those instructions was that we'll just stand on our prior objections. And we ask that the court submit their instructions. So it's very difficult to get here at this stage and then have them not requested in their own instruction, but claim that somehow it was a district court error. If this court were to find that this issue is not waived, your position is what, that the judge made the right decision? Correct? Yes. And if the judge made the wrong decision, is it your argument, your backup argument that at most this court should send it back for a determination to be made, perhaps by a jury? What? If the court were to remand and not find a waiver, there clearly is no jury finding as to that issue. It's possible that we'd have to go back and find that narrow issue. There's some suggestion here that it's not a matter of a jury making that determination. It's just the ruling by the magistrate is just flat out wrong. And that there's only that well employment here. I don't think that's correct. Because I think there's a difference between contractual employment and whether an employee has a reasonable expectation of continued employment. They're not the same thing. In the Hollis case, I think the district court carefully analyzed the difference between those two. And that's why it relied so much on this language, this exclusionary language of except as otherwise provided herein, that you have four costs. And I think it's even possible without the jury finding that. I mean, there was so much evidence even without the jury being asked that. We have Sheriff Klingler's own process where they've granted this due process hearing repeatedly. I mean, there's lots of evidence in the record, even to support that there was a protected property interest. Could I ask you a question about the negligent infliction of emotional distress? Sure. Part of the opposition response to that, as I understand it, is that we're not talking about negligent conduct here. We're talking about intentional conduct. The items that are on the list that the plaintiff presented to the jury, none of those were negligent. They were all intentional acts on the part of the actors. How do you respond to that? Well, I don't think some of them are necessarily intentional acts. I mean, some of it isn't just in the manner in which they went about these things. Now, clearly, I think overall intention was that they wanted to find a reason to get rid of Mr. Williams' employment. Is there a separate action called intentional inflection of emotional distress? I think you can have the negligence in the way they went about conducting the hearings, the way they went about providing him notice of what he was accused of. What was negligent as distinct from intentional in your view? What was negligent? Right, as distinct from intentional. Well, I think the fact that the manner in which Judge, or not Judge, but Sheriff Klingler did the hearings. I mean, I guess- Well, how is that? Well, go ahead. I guess, I mean, the difficult part about that is clearly there's some level of intent there. But negligence, even in the policies that they're providing. I mean, the way they did these hearings, they didn't even allow any kind of cross-examination. Sheriff Klingler has already met with his people and has made a decision on that part of it. If I could quickly, just in the few minutes, or seconds that I have, just on the front pay issue. We believe that there was a clear error and that Mr. Williams was entitled to a make-whole remedy in order to compensate him for his valuable pension and would ask that he be reversed. The district judge found, as I understand it, that because he was making a fair amount more money in his new job, that that obviated the equitable need for front pay? He did. Am I correctly stating that? He did find that. My time is out. May I quickly respond? Please. The reason that we think that that is an abuse of discretion is because that reinstatement was incredibly valuable. The deferred compensation, and that's why we cited it to the Blum case because we thought it was so helpful. Deferred compensation is not like anything else. You're sort of like building it a little bit at a time. And so you have to at some point say if you can't reinstate, what's the monetary equivalent? And that's where we think there was a problem. Number one, the tuition assistance, no evidence that it benefited Williams at all because there was no evidence he'd pay for his kids. And he was making $20,000 more a year, but he could retire in four and a half and seven and a half. So what we're really arguing is to say not that it shouldn't possibly be an offset, but it should be the same timeframe. Thank you. Thank you. We understand your position. Yes. I believe you have a little rebuttal time remaining. Thank you. Let me ask you a question to get this straight now. One, you objected to the court's instruction, right, that the property interest in continued employment has been established as a matter of law or something like that, right? Yes. You objected to that. Now, did you proffer an instruction of your own? Yes. And what did that instruction say?  Here's the thing. I would say it was almost a typographical error. We had two due process instructions that were submitted. One was a procedural due process and one was a substantive due process instruction. On the substantive due process instruction, we had the language that required the plaintiff to prove a protected property interest in employment. On the procedural due process instruction, we omitted to include that. However, the plaintiffs included that in their proposed instruction, which we objected to because it presupposes that Mr. Williams had a protected property interest. So basically your position is that instruction number 11 was perfect except for the inclusion of the one sentence at lines 16 and 17. Yes. Because it states all the correct criteria and elements, but then says, I instruct you that he had a protected property interest, and the first element, therefore, requires no proof. Yes. And if that sentence were gone, you were happy with it. Right. And as the judge created those instructions and gave them to counsel to review, we were able to review those and identify that that was the correct language with the exception of that separate instruction that you have noted, Judge Graber. And so we objected to that. And so while that wasn't my most artful set of jury instructions, that's the area that we were headed to. All right. Now let me turn to another topic. What is your response to Ms. Casperson's argument about why she was hurt by the judge's ruling on front pay, that there would be no front pay? First of all, I would briefly say that it's not a front pay issue because Mr. Williams has completely replaced his employment. He went from earning $50,000 at the sheriff's office to earning $70,000 at his next employment. What they're asking for is front benefits, which I don't know that counsel has even cited solid case law that we give that, under the make-whole doctrine, I guess. But separate from that, Mr. Williams had other benefits that Judge Kunauer looked at and said this is effectively making him whole. Judge Kunauer did a good job of analyzing the facts on those points. He recognized that Mr. Williams was making $20,000 more per year, that Mr. Williams had different but similar benefits, tuition reimbursement, a 401k matching, and that there was a substantial risk of windfall if he awarded any front benefits because of the fact that Mr. Williams had benefits available to him. And in addition, Judge Kunauer recognized that if Mr. Williams goes back to employment at a sheriff's office or in law enforcement in Idaho, those PERSI benefits, the state benefits, would be reinstated, and he would then be able to retire with those benefits. So that created an additional potential for windfall. So he denied any front pay, and we'd ask the court to affirm that. What was the basis for no reinstatement? The basis for it? Judge Kunauer found that there was too much of antagonism between the parties. And that would be, of course, step one to decide that, and then step two is discretionary to award front pay. I'm out of time. Thank you. Thank you, Counselor. It's been a pleasure. We appreciate the arguments that both of you presented today. They've been very helpful. And the case just argued is submitted, and we are adjourned for this session. Okay. All rise.
judges: Tashima, Graber, Mihm